UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| THERESE MARIE VONBOECKMAN, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) )   Case Number 5:13-cv-1401-SLB |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Therese Vonboeckman brings this action pursuant 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ["DIB"]. (Doc. 6.)[1] Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be remanded for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff initially filed a Title II application for a period of disability and DIB on December 29, 2010, (R. 60), alleging a disability onset date of June 21, 2008, (R. 18, 39). The Social Security Administration ["SSA"] denied her application on March 24, 2011. (R. 65.) Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"], which was held

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. When the document cited is duplicated in the bound physical copy of the transcript of the entire record of the proceedings, the page number of that transcript is given, ["R ___"].

on April 24, 2012. (R. 32.) After the hearing, the ALJ found that plaintiff did not have an impairment or a combination of impairments listed in, or medically equivalent to one listed in, the Listings of Impairments. (R. 21.) The ALJ also found that plaintiff has the residual functional capacity to perform jobs that exist in significant numbers in the national economy and in Alabama. (R. 24-25.) In light of these findings, the ALJ denied plaintiff's request for a period of disability and DIB on June 6, 2012. (R. 26.)

Plaintiff then petitioned the Appeals Council to review the ALJ's decision. (R. 12.) The Appeals Council found no reason under its rules to review the ALJ's decision and denied plaintiff's request for review. (R. 1.)

Following the denial of review by the Appeals Council, plaintiff filed an appeal in this court. (Doc. 1.) She requests that this court reverse the Commissioner's decision and award benefits or, in the alternative, remand the case for further consideration. (Doc. 6 at 13.)

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that

of the [Commissioner]; rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

The court reviews the Commissioner's conclusions of law de novo. *Cornelius,* 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and/or DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB] if [she] is unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* § 416(i)(1); § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[2] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir.

---

[2] 20 C.F.R. § 404.1572 and § 416.972 define "substantial gainful activity":
(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

2012).[3]

The ALJ found that plaintiff had not engaged in any substantial gainful activity since June 21, 2008, the alleged onset date. (R. 20.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c). "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: "chronic migraine headaches with rebound syndrome; depression; and anxiety." (R. 20.) The ALJ found that plaintiff's kidney stones and degenerative disc disease of the thoracic spine were non-severe impairments. (R. 21.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 21.) Specifically, the ALJ found that plaintiff's mental impairments did not meet or equal the criteria in listings 12.04 or 12.06 because they did not "cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation." (R. 22.) The ALJ also found that the evidence did "not demonstrate that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate," and that "there is no history of an inability to function outside a highly supportive living arrangement." (*Id*.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commissioner's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled.  20 C.F.R. § 404.1560(b)(3); §

416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff is a younger individual (25 years old at the time of the hearing) with a high school education. (R. 24.) The ALJ found that she has the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations:

> the claimant can perform frequent climbing of ramps and stairs but only occasional climbing of ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She can tolerate frequent exposure to extreme cold, fumes, odors, dust, gas, and poor ventilation. The claimant cannot be exposed to unprotected heights or hazardous machinery. She is able to concentrate in two-hour segments with customary breaks for completion of eight-hour workday, but requires gradual introduction to changes in a work environment.

(R. 22.) The ALJ found that plaintiff's RFC restricts her from performing any of her past relevant work. (R. 24.)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the

region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC and her vocational factors. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of hand packager, inspector, and tester. (R. 25.) These jobs exist in significant numbers in Alabama and in the national economy. (*Id.*) Because the ALJ found that jobs exist in significant numbers that are consistent with plaintiff's age, education, work history, and RFC, the ALJ found that plaintiff was not disabled. (R. 25.)

## B. MS. VONBOECKMAN'S CLAIMS

Plaintiff alleges that she suffers from chronic migraine headaches with rebound syndrome, depression, and anxiety, all of which preclude her from working. (Doc. 6 at 4.) In the Memorandum of Law in Support of Plaintiff's Argument, plaintiff makes two principle arguments: (1) the ALJ failed to properly analyze plaintiff's pain under the Eleventh Circuit's three-part pain standard, and (2) the ALJ placed undue emphasis on plaintiff's activities of daily living. (Doc. 6 at 5, 9.)

### 1. Analysis of Plaintiff's Testimony of Pain Under Three-Part Pain Standard

Plaintiff first argues that the ALJ failed to properly assess her testimony of pain under the Eleventh Circuit's three-part pain standard. (Doc. 6 at 5.)

The Eleventh Circuit pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Additionally, SSR 96-7p guides courts in evaluating testimony of pain by explaining a two-step process set out in 20 C.F.R. § 404.1529 and § 416.929: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the plaintiff's case survives the first step, then:

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The Eleventh Circuit considers the *Holt* standard and the standard set forth in the regulations as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same

language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). In this case, the ALJ conducted an analysis of plaintiff's testimony of pain under the two-step process set out in SSR 96-7p; therefore, the ALJ satisfied the requirement to apply the Eleventh Circuit's three-part pain standard.

Under step one, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 23.) The ALJ noted that plaintiff's "medical records do indicate that she treats for headaches on a regular basis, and that she has had difficulty responding to medications," thus supporting the existence of an underlying medical condition. (*Id.*) The court notes that the ALJ assigned little weight to the medical opinions of Dr. Erin Smith and Dr. Robert Estock, who both found that plaintiff had no severe mental impairment, because Dr. Smith examined plaintiff only once, and Dr. Estock did not examine plaintiff in person. (R. 24.)

Under step two, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [plaintiff's] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23.) In discrediting plaintiff's statements concerning the severity of her pain, the ALJ relied on (1) plaintiff's "limited need for narcotic shots to relieve severe pain or headaches symptoms," (2) "negative diagnostic imaging and no neurologic deficits on examination," and (3) plaintiff's daily activities. (*Id.*)

Plaintiff contests the ALJ's application of the two-step process, which is synonymous with the Eleventh Circuit's pain standard, to her case. The ALJ first pointed to plaintiff's "limited need" for narcotic injections as evidenced by the small number of narcotic shots plaintiff had received for her migraine pain. (R. 23; *see* R. 280, 298.) However, this finding is inconsistent with the ALJ's finding that plaintiff has the severe impairment of "chronic migraine headaches with rebound syndrome." Plaintiff's counsel stated during the hearing that plaintiff was "not really taking any pain medication despite the chronic migraines . . . because of the diagnosis she carries called rebound." (R. 38.) Plaintiff's counsel further explained on the record that "rebound" syndrome "means that if [doctors] give [plaintiff] something that is partially effective in controlling the migraine, the migraine comes back with a vengeance even stronger once the medication wears off." (*Id*.) While a claimant's conservative treatment history may provide evidence to discredit her allegations of disabling pain, *Wilson v. Barnhart*, 284 F.3d 1219, 1223 (11th Cir. 2002) (citing the lack of significant medical treatment as one consideration in finding that plaintiff did not meet part two of the pain standard), a more rigorous treatment regimen in the form of additional narcotics injections would presumably increase plaintiff's pain because of her rebound syndrome. Therefore, given the ALJ's acknowledgment that plaintiff suffers from rebound syndrome, the ALJ erred in finding that the limited number of narcotic injections used to treat plaintiff undermines plaintiff's testimony regarding the intensity, persistence, and limiting effects of plaintiff's pain.

The ALJ additionally relied on the record insofar as it "reflects negative diagnostic imaging of the claimant's head and no neurologic deficits on examination." (R. 23.) To support this finding, the ALJ cited two reports by Dr. Gregory James, a treating physician, in which he

documented that plaintiff's computerized tomography ["CT"] scans were normal. (R. 23, 195, 243.) However, both CT scans predate plaintiff's alleged disability onset date by several months, and thus, are not relevant evidence. (*See id.*) The ALJ also cited a follow-up report by Dr. James, in which he found that plaintiff's neurological exam produced normal results; however, this report also predates plaintiff's alleged disability onset date by several months. (R. 23, 193.) The ALJ additionally cited five medical reports from plaintiff's examinations at West Limestone Family Care between 2011 and 2012. (R. 23, 290, 293, 295, 298, 301.) These reports all state that the neurologic portion of plaintiff's physical exam reflected a mental status of "alert and oriented." (R. 290, 293, 295, 298, 301.) However, these reports do not directly conflict with plaintiff's claims of chronic migraines, depression, and anxiety, and alone, they do not provide substantial evidence supporting the ALJ's finding of no disability.

### 2. Plaintiff's Activities of Daily Living

Plaintiff next contends that the ALJ placed undue emphasis on plaintiff's activities of daily living in discrediting her testimony of the intensity and persistence of her pain. (Doc. 6 at 9.) The ALJ found that plaintiff "manages her activities of daily living consistent with the established residual functional capacity." (R. 23.) The ALJ noted that plaintiff gave birth to a daughter, assumed responsibility for caring for her daughter, and traveled to care for her in-laws at least twice a week. (*Id.*) Additionally, the ALJ pointed to plaintiff's "ability to perform light household chores, occasionally drive, occasionally grocery shop, prepare meals, and visit with her family." (*Id.*)

To truly evaluate whether plaintiff's activities of daily living are "consistent with the established residual functional capacity," an analysis beyond merely the categories of plaintiff's

13

activities is needed. First, giving birth to a child is not inconsistent with plaintiff's statement that she has chronic migraine headaches that prevent her from engaging in substantial gainful activity. Plaintiff stated that she assumes responsibility for her daughter while her husband is working, (R. 41), which consists of changing her daughter's diaper, preparing meals, and bathing and dressing her daughter, (R. 153). To prepare meals, plaintiff "usually [fixes her daughter] a hot dog or half of a sandwich or something like that." (R. 44.) Plaintiff stated that she only prepares meals that she can microwave or that are a "really quick fix." (R. 44-45.) Plaintiff's activities of preparing meals and maintaining her daughter's hygiene require less ability than the RFC assigned to plaintiff and, thus, are not substantial evidence upon which the ALJ could rely to discredit plaintiff's subjective testimony of pain.

Plaintiff also stated that she drives to her in-laws on Mondays and Wednesdays to help her grandmother, who has Alzheimer's.[4] (R. 43.) Plaintiff stated that she helps get her grandmother get up from bed and helps feed her but spends the rest of the day "laying on the couch or in the recliner unless we [plaintiff and her father-in-law] have to change her again." (*Id.*) She also stated that she cannot make the twenty minute trip to her in-laws every Monday and Wednesday and that she recently could not make the trip on any day for a week. (R. 49.) Plaintiff's visits to her in-laws, which are not always made twice a week and which consist partly of lying down, are also less demanding than the RFC assigned to plaintiff.

---

[4] Plaintiff stated at the hearing that "on Mondays and Wednesdays we go to my in-laws' house and help with my grandmother." (R. 43.) It is unclear whether plaintiff's grandmother is related to plaintiff biologically or through marriage.

Lastly, the ALJ cites plaintiff's ability to perform light chores, cook, occasionally grocery shop and drive, and visit with family to discredit plaintiff's testimony of pain. (R. 23.) Other than caring for her daughter, plaintiff stated that she gives her cat food and water and changes the litter. (R. 153.) Plaintiff stated that she prepares quick meals for her and her daughter when her husband is working, but she also stated that her "husband does most of the laundry, and he does the dishes, and he's mostly the one doing the cooking." (R. 44.) Plaintiff stated that her husband buys groceries and that she grocery shops only "[e]very now and then" because she has to "sit down halfway through or a couple of minutes into it" due to nausea and pain. (R. 45.) Lastly, visiting with family, even when plaintiff drives twenty minutes to do so, is not indicative of plaintiff's RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. "The fact that a disability claimant is able to sustain a family relationship certainly does not demonstrate a capability for sustained gainful work where there are disabling impairments present." *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990).

Plaintiff was right to question the ALJ's reliance on plaintiff's daily acitivites in finding that plaintiff's statements are not credible. Generic daily activities such as "shopping" and "cooking" are not activities that an ALJ can simply list to discredit a claimant's testimony of pain. *See Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272-73 (M.D. Fla. 2012). A claimant's activities must be actually inconsistent with what the claimant alleges. Plaintiff's testimony regarding her activities of daily living are not inconsistent with her complaints of chronic migraine headaches with rebound syndrome, depression, and anxiety.

Based on the record as a whole, the court finds that the ALJ's determination that plaintiff is capable of performing certain types of work is not supported by substantial evidence.

"An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p. If an ALJ needs additional information to assess a claimant's credibility regarding testimony of pain, the ALJ has a duty to "obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p. Because the ALJ did not base her decision on substantial evidence, and because the ALJ could not base her finding that plaintiff's severe impairments do not preclude her from engaging in substantial gainful employment merely on a lack of objective medical evidence, the ALJ erred in her findings. Therefore, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for a period of disability and DIB is due to be remanded to the Commissioner for further proceedings as she may deem appropriate.

## IV. CONCLUSION

For the reasons set forth above, the court hereby **REMANDS** this cause to the Commissioner for further proceedings as she may deem appropriate. An Order remanding this cause to the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 13th day of November, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE